**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| DONALD RIPPEE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-cv-00325-DGK |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Donald E. Rippee, Jr. brings this three-count case under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA"). Plaintiff alleges that Defendant Equifax Information Services, LLC ("Equifax") reported a charged-off debt on Plaintiff's report which is attributable to Plaintiff's father, Donald E. Rippee, Sr. Plaintiff alleges that Equifax failed to "follow reasonable procedures to assure maximum possible accuracy" as required by § 1681*e*(b), that Equifax failed to conduct a reasonable reinvestigation after Plaintiff disputed the account as required by § 1681*i*, and that Equifax failed to provide Plaintiff a full copy of his updated credit report when Plaintiff requested a report in September 2020 as required by § 1681*g*. Compl., ECF No. 1. Now before the Court is Defendant's motion for partial summary judgment, ECF No. 30. For the reasons stated below, the motion is GRANTED. Plaintiff's claims under §§ 1681*e*(b) and 1681*i* are DISMISSED WITH PREJUDICE.

**Summary Judgment Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing this lack of genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must nonetheless substantiate its allegations "with sufficient probative evidence [that] would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations omitted).

**Undisputed Material Facts**[1]

The Court considers the following facts in the light most favorable to Plaintiff. Defendant Equifax is a consumer reporting agency as defined by the FCRA. *See* 15 U.S.C. § 1681*a*(f). As a consumer reporting agency ("CRA"), Equifax assembles information about consumers and furnishes it to lenders so they may determine a consumer's credit risk. Equifax obtains information from a number of sources, including banks, creditors, collections agencies, and court records. Equifax compiles this information into a "credit file" corresponding to each consumer.

Plaintiff, Donald Edgar Rippee, Jr., and his father, Donald Edgar Ripee, Sr., lived at the

[1] The Court excluded asserted facts properly controverted by the parties, immaterial facts, facts not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact. The Court included facts that were not genuinely disputed by any evidence under Federal Rule of Civil Procedure 56(c)(1).

same address from 2012 to 2014. While Plaintiff's father maintained this address until his death in August of 2020, Plaintiff moved out in 2014. On May 19, 2015, Plaintiff sued Equifax, alleging that Equifax had mixed information on his father's credit file with his own. *Rippee v. Equifax Info. Servs., LLC*, No. 4:15-cv-00377-GAF (W.D. Mo. filed May 19, 2015). The parties settled the case, and Equifax placed a block on Plaintiff's file so that any credit information attributable to Plaintiff's father's social security number would not show up on Plaintiff's file.

Five years later—during May of 2020—Plaintiff and his wife sought to refinance their home. During the re-financing process, Plaintiff discovered a notation on his Equifax credit file stating that a $14 account from Swiss Colony[2] had been charged off. Believing that the account is properly attributed to his father, Donald Rippee, Sr., Plaintiff submitted three disputes to Equifax.

Equifax received Plaintiff's first dispute letter on July 18, 2020. In the letter, Plaintiff stated that the Swiss Colony account was his father's and that Equifax had recorded Plaintiff's father's address as Plaintiff's own. Plaintiff also stated that he had lived at that address from 2012 to 2014 and thought that "the address may be causing part of the problem." Def. Ex. 3, ECF No. 30-6. Plaintiff included a photocopy of his driver's license—which listed his name only as "Donald Edgar Rippee" and did not include a Jr. suffix. The letter did not include a statement from Donald E. Rippee, Sr. that he was responsible for the account,[3] nor did it include any documentation evidencing that Plaintiff was not responsible for the account. *Id.*

---

[2] Swiss Colony is subsidiary of Colony Brands, a catalog and internet retailer that delivers apparel, shoes, home décor and furnishings, outdoor, health and beauty, electonics, toys, food and gifts using . . . convenient credit options." About Us, Colony Brands & Affiliates, https://www.colonybrands.com/companies/building-an-enterprise/about-us/ (last visited August 19, 2022).

[3] Given that his father passed away the month after Plaintiff sent the first dispute letter, it is understandable that Plaintiff did not include a statement from his father. Plaintiff's failure to include such a statement in his dispute letters is not fatal to his claims.

Equifax then reinvestigated Plaintiff's file. Equifax contacted Swiss Colony[4] via Automated Consumer Dispute Verification ("ACDV"). Swiss Colony's ACDV response—dated July 20, 2020—stated that the account belonged to "RIPPEE DONALD E," and that Plaintiff's social security number was on the account. Ex. 4, ECF No. 30-7. In addition, the ACDV response reported the address on the account as the same address which Plaintiff and his father shared from 2012 to 2014. On July 21, 2020, Equifax sent Plaintiff a response stating that it had removed the address from Plaintiff's credit file, but had verified that the Swiss Colony account was properly attributed to Plaintiff. Ex. 5, ECF No. 30-8. Plaintiff states that he never received this letter.

Plaintiff submitted two more disputes, which Equifax received on October 10, 2020 and March 4, 2021, respectively. Like Plaintiff's first letter, the two subsequent disputes included a photocopy of Plaintiff's driver's license, but included neither a statement from Donald E. Rippee, Sr., that he was responsible for the account nor any documentation evidencing that Plaintiff was not responsible for the account. Def. Ex. 6, ECF No. 30-9; Def. Ex. 9, ECF No. 30-12. In response to each, Equifax contacted Swiss Colony via ACDV, who again reported that the account belonged to "RIPPEE DONALD E" and that Plaintiff's social security number was on the account. Def. Ex. 7, ECF No. 30-10; Def. Ex. 10, ECF No. 30-13. Equifax's response letters to these disputes—which Plaintiff states he never received—each state that Equifax had verified that the account belonged to Plaintiff. Def. Ex. 8, ECF No. 30-11; Def. Ex. 11, ECF No. 30-14.

Despite the negative history on his credit file, Plaintiff maintained an Equifax credit score of 717 and refinanced his home in May of 2020.

[4] Swiss Colony agreed to provide accurate data to Equifax, and Equifax—as it does with all data furnishers—previously investigated Swiss Colony and determined that it was a reliable source of consumer data.

## Procedural History

Plaintiff filed this lawsuit on May 12, 2021, alleging that Equifax violated §§ 1681*e*(b), 1681*i,* and 1681*g*. Plaintiff seeks actual damages and attorney's fees. *See* 15 U.S.C. § 1681*o*. Plaintiff also asserts that Equifax willfully violated the FCRA and seeks attorney's fees and punitive damages under §1681*n*. On March 28, 2022, Defendant filed this motion for summary judgment on Plaintiff's §§ 1681*e*(b) and 1681*i* claims.[5]

## Discussion

In order for a § 1681*e*(b) claim to survive summary judgment, a plaintiff must present evidence that the CRA reported inaccurate information about the plaintiff and that it "failed to follow reasonable procedures to assure the accuracy of [its] reports," *Reed v. Experian Info. Sols., Inc.*, 321 F. Supp. 2d 1109, 1113 (D. Minn. 2004). Likewise, for a § 1681*i* claim to survive summary judgment, a plaintiff must show that the CRA reported inaccurate information, *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1103 (D. Minn. 2011) (citing *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008)), that the plaintiff disputed information contained in the credit report, and that the CRA failed to reinvestigate the information, or upon reinvestigation failed to confirm, correct, modify or delete the information. *Reed*, 321 F. Supp. 2d at 1113; *see also Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (stating the elements for claims brought under both § 1681*e*(b) and § 1681*i*).

To be entitled to actual damages under either § 1681*e*(b) or § 1681*i*, a plaintiff must show that he suffered harm resulting from the defendant CRA's failure to follow reasonable procedures or conduct a reasonable reinvestigation. 15 U.S.C. § 1681*o*; *Peterson v. Experian*

[5] It is unclear whether Plaintiff intends to continue his § 1681*g* claim. Neither party makes any reference to §1681*g* in their briefing on the pending motion, and Plaintiff's suggestions in opposition to the instant motion state only that "[t]he instant case involves violations of the 15 U.S.C. § 1681*e*(b) and 15 U.S.C. § 1681*i*. Suggestions in Opp'n at 35, ECF No. 34. This Order therefore does not address Plaintiff's §1681*g* claim.

*Info. Sols.*, No. 21-2863, 2022 WL 3365130, at *1 (8th Cir. Aug. 16, 2022) ("To maintain a claim for negligent violation of the FCRA, a plaintiff must offer proof of 'actual damages sustained by the consumer as a result of the failure.'" (quoting 15 U.S.C. § 1681*o*(a)(1))). Alternatively, a Plaintiff may recover punitive damages for willful violations of § 1681*e*(b) or § 1681*i*. 15 U.S.C. § 1681*n*.

Assuming Equifax violated either § 1681*e*(b) or § 1681*i*, Plaintiff has not shown that he sustained actual damages. Plaintiff has also failed to show that Equifax's behavior was willfull, and therefore is not entitled to punitive damages either. Consequently, Equifax's motion is GRANTED.

## I. Plaintiff has not shown that he sustained actual damages stemming from Defendant's alleged violations of the FCRA.

Though Plaintiff was not denied credit, he alleges that he nonetheless suffered actual damages in the form of emotional distress.[6] While emotional distress damages—such as mental pain and anxiety—may constitute actual damages under the FCRA, they "must be supported by competent evidence of genuine injury, which may be evidenced by one's conduct and observed by others." *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 828 (8th Cir. 2013) (quotations omitted).

Plaintiff identifies the following as his injury: 1) "stress, distress, and embarrassment" resulting from the mortgage lender's delay in processing his application, 2) that he has been deterred from requesting other credit, 3) that his marriage has been strained by both stress surrounding finances and the fact that Plaintiff does not want to apply for credit, and 4) trouble

[6] To the extent Plaintiff argues that he has suffered injury as a result of a lowered credit score, *see* Suggestions in Opp'n at 44, ECF No. 34, this "type of abstract harm does not support actual damages." *Peterson v. Experian Info. Sols.*, No. 21-2863, 2022 WL 3365130, at *2 (8th Cir. Aug. 16, 2022).

sleeping, lack of concentration and motivation, extreme irritability, and withdrawal as a result of Plaintiff feeling uncertain about his credit ability. Suggestions in Opp'n at 44–46, ECF No. 34.[7]

Regarding Plaintiff's allegations of "stress, distress, and embarrassment" resulting from the mortgage lender's delay in processing his application, "a brief episode of frustration and unhappiness does not establish the sort of concrete emotional distress that is required to constitute a genuine injury and actual damage." *Taylor*, 710 F.3d at 829. Regarding Plaintiff's statements that he has been deterred from applying for credit, and Plaintiff's and his wife's statements that their marriage has been strained and that Plaintiff has trouble sleeping, lacks concentration and motivation, is irritable, and often becomes withdrawn, *see* Pl.'s Suggestions in Opp'n at 34–35, Statement of Fact ¶¶ 122–27, ECF No. 34, such statements are "self-serving and conclusory" and thus "incapable of surviving summary judgment." *Peterson*, 2022 WL 3365130, at *3 (holding the plaintiff could not show damages for emotional distress where there was no documented physical injury, the plaintiff was not medically treated for injury, and no other witness corroborated any outward manifestation of emotional distress). Though Plaintiff and his wife point to the fact that Plaintiff now relies on an over-the-counter sleep aid, a scintilla of evidence is insufficient to avoid summary judgment. *Id.* Plaintiff has not put forward sufficient evidence from which a reasonable jury could award emotional distress damages.

## II. Plaintiff has not shown that Equifax's alleged violations of the FCRA were willful and thus has not established that he is entitled to punitive damages.

In order to show a willful violation of the FCRA, a plaintiff must present evidence that the CRA "knew it was violating the FCRA or that it acted 'in reckless disregard of [its] statutory

[7] Plaintiff also asserts he has been injured because "Equifax has taken from him control over his own private financial information." Suggestions in Opp'n at 46. This is insufficient to establish actual damages. *See Peterson*, 2022 WL 3365130, at *1 (8th Cir. Aug. 16, 2022) ("The statutory language defeats [plaintiff's] claim that the mere dissemination of inaccurate information to a third party in a credit report is enough to raise a triable damages question.").

duty.'" *Campbell v. Experian Info. Sols., Inc.*, No. 08-4217-CV-C-NKL, 2009 WL 3834125, at *8 (W.D. Mo. Nov. 13, 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). Plaintiff does not appear to argue that Equifax knowingly violated the FCRA. To show that a CRA acted in reckless disregard of its duty under the FRCA, a Plaintiff must present evidence that the CRA not only violated the FCRA, but also that the CRA's actions "ran a risk of violating the law" that is substantially greater than mere carelessness. *Id.* at *8 (quoting *Safeco*, 551 U.S. at 69). In other words, "the actions of the credit reporting agency must be 'objectively unreasonable' under the text of the FCRA." *Id.* (quoting *Safeco*, 551 U.S. at 70); *see also Hammer v. Sam's E., Inc.*, 754 F.3d 492, 501 (8th Cir. 2014) (abrogated on other grounds).

Assuming that Plaintiff has shown a violation of § 1681*e*(b)—i.e. that the Equifax reported inaccurate information about Plaintiff and then failed to follow reasonable procedures to assure the accuracy of its reports—Plaintiff has not put forward any evidence that Equifax's actions were objectively unreasonable. Plaintiff points only to the fact that Equifax was aware of the industry standard definition of a "mixed file," that Equifax has defended a number of lawsuits regarding mixed files, that Equifax became aware in 2014 that a different account belonging to Plaintiff's father had been attributed to Plaintiff and that Plaintiff and Equifax had previously settled this dispute. Suggestions in Opp'n at 20–22, Pl.'s Response to Def.'s Statements of Fact ¶ 72, ECF No. 34. However, the fact that Equifax was aware of the industry definition of a mixed file and that it had defended other cases involving mixed files is not relevant to whether its actions here were objectively unreasonable. Regarding Plaintiff's prior lawsuit against Equifax, Equifax made reasonable efforts to prevent any further mixing of information between Plaintiff and his father when it blocked credit information linked to Plaintiff's father's social security number from Plaintiff's account.

Likewise, assuming that Plaintiff has shown a violation of § 1681*i*— i.e., that Equifax reported inaccurate information and then failed to correct, modify, or delete the information—Plaintiff has not shown that any violation was willful. Plaintiff points to the fact that Equifax received Plaintiff's three written dispute letters in 2020 and 2021, and that Equifax knew—as a result of the dispute letters—that Plaintiff's father's address was included on Plaintiff's report. *Id.* However, Plaintiff's three dispute letters included no verifying documents stating that the Swiss Colony account belonged to Plaintiff's father. Equifax investigated each report nonetheless, and received confirmation from Swiss Colony—based on the fact that Plaintiff's social security number was listed on the account—that the account belonged to Plaintiff. In addition, though Equifax learned that that the Swiss Colony account included Plaintiff's father's address, Plaintiff had lived at this address for two years. As such, Plaintiff has failed to put forward sufficient evidence from which a reasonable jury could conclude that Equifax willfully violated the FCRA. As a result, Plaintiff may not recover punitive damages.

**Conclusion**

Equifax's motion for partial summary judgment is GRANTED. Plaintiff's claims under §§ 1681*e*(b) and 1681*i* are DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

DATED: September 19, 2022

/s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT